## SCOTT v. RHODES et al.

### No. 19,537; September 4, 1895.

#### 41 Pac. 878.

**Estoppel by Record.**—One Claiming Under a Grant by a certain name is conclusively bound by a judicial determination and definition of what land was meant by that name.

**Ejectment—Pleading.**—Recovery cannot be had in Ejectment for land not specified in the complaint.

APPEAL from Superior Court, San Diego County; E. S. Torrance, Judge.

Ejectment by Maria A. Scott against A. G. Rhodes and others. From a judgment for defendants for costs, and from an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Hunsaker & Stevens, Chalmers Scott and E. Parker for appellant; J. O. W. Paine and C. H. Rippey for respondents.

VANCLIEF, C.—Action of ejectment to recover possession of the north half of a tract of land situate in the county of San Diego, described in the complaint by the name "Rancho Buena Vista," and not otherwise. The complaint is in the most general form, alleging plaintiff's ownership and possession of the north half of said tract, and that defendants ejected her therefrom, and withhold from her the possession thereof. The defendants denied plaintiff's alleged ownership and possession, and further denied that they ever entered upon or ejected plaintiff from the land described in the complaint, or that they ever withheld the possession thereof from the plaintiff. The cause was tried by the court without a jury, and the court found that plaintiff was the owner and entitled to the possession of the land described in her complaint as "the north half of the Rancho Buena Vista," but further

found that neither of the defendants ever entered upon or ejected the plaintiff from said north half, or any part thereof, or ever withheld the possession of the same, or any part thereof, from the plaintiff; and as a conclusion of law found "that the plaintiff should take nothing by this action, and that the defendants are entitled to judgment against the plaintiff for their costs," and rendered judgment accordingly. The plaintiff appeals from the judgment, and from an order denying her motion for a new trial.

The principal question for decision is one of fact: Did the defendants, or any one of them, oust or eject the plaintiff from any part of the land described in her complaint as the "north half of Rancho Buena Vista," or withhold from her the possession of any part thereof? The evidence shows with reasonable certainty what lands the defendants entered upon and withheld from the plaintiff. Each one of them, as preemptor or homestead claimant, separately entered upon a small, defined tract of what he claimed to be government land, outside and west of the Rancho Buena Vista; so that the controversy ultimately relates only to the location of the western boundary line of the Rancho Buena Vista. The plaintiff derived her title from a Mexican grant, made by Governor Pio Pico to an Indian named Felipe in the year 1845, and confirmed by the United States board of land commissioners for this state, and by the United States district court. The petition of Felipe for the grant describes the land as a "small piece of land called 'Buena Vista,' . . . . which piece of land consists of half a league in length and one-half in breadth, on which I maintain some little stock that serve for the maintenance of myself and family." After reciting this petition, Governor Pico made the grant in the following words: "After having previously made the necessary investigation according to law and regulations, in the exercise of the powers vested in me, in the name of the Mexican nation, I have concluded to grant him the mentioned land, declaring it his property by the present letters patent and under the following conditions: First. . . . . Second. He will solicit of the re-

spective judge to give him juridical possession in virtue of this
document, by whom the boundaries are to be marked, putting
the necessary landmarks.  Third. The land granted is of an
extent of half a square league, and the same he actually occu-
pies.  The judge who shall give the possession will cause it
to be measured according to ordinance, leaving the surplus
that may result to the benefit of the nation for convenient
purposes.''  The judge who gave juridical possession reported
the measurements and boundaries of the possession given as
follows: ''As we stood at one of the boundaries of the garden
of the Indian Felipe, the line was drawn east, and there were
measured and counted two thousand five hundred varas, which
terminated at the boundary of Don Lorenzo Soto, where the
party interested was ordered to place his landmark.  From
this place the line was drawn in a south course.  There were
measured and counted two thousand five hundred varas, which
ended at a small peak, where stand two rocks joined together.
Here the party interested was ordered to place his landmark.
From this point the line was drawn, course west, and there
were measured and counted two thousand five hundred varas,
which ended at a small red hill, where the party interested
was ordered to place his landmark.  From this point the line
was drawn, course north.  There were measured and counted
two thousand five hundred varas, which ended upon a hill
where there stands a large rock, and the party in interest was
ordered to place his landmark.''  In the order of confirmation
by the United States land commission, the grant is described
as follows: ''The lands of which confirmation is hereby made
are known by the name of 'Buena Vista,' and are bounded
and described as follows, to wit: Commencing at the northwest
corner of the garden of the Indian Felipe, and running east
two thousand and five hundred varas to the boundary line of
Lorenzo Soto's; thence running south two thousand five hun-
dred varas to a small peak, where stand two rocks, joined
together; thence running west two thousand five hundred
varas to a small red hill; thence running north two thousand
five hundred varas to the place of beginning, on a hill, where

there is a rock—containing in all one-half of a square league. Reference for further description is had to the original grant and to the translation of the original record of judicial possession, both of which documents are on file as evidence in the cause.'' In the judgment of the United States district court, affirming that of land commission, the grant is described as follows: "And it is further ordered, adjudged, and decreed that the claim of the appellee is a good and valid claim, and that the said claim be, and the same is hereby, confirmed to the extent of one-half of a square league of land, a little more or less, being the same land which is situated in the county of San Diego, known by the name of 'Buena Vista,' and bounded and described as follows: Commencing at the northwest corner of the garden of the Indian Felipe, and running east two thousand five hundred varas to the boundary line of Lorenzo Soto's; thence running south two thousand five hundred varas to a small peak, where stand two rocks, joined together; thence running west two thousand and five hundred varas to a small red hill; thence running north two thousand five hundred varas to the place of beginning, on a hill, where there is a rock—containing in all one-half of a square league. Reference for further description to be had to the original grant and to the translation of the original record of judicial possession.'' The grant has been surveyed by five different United States deputy surveyors— first, by J. C. Hayes, in 1857; second, by Max Strobel, in 1867; third, by William Minto, in 1881; fourth, by W. G. Wheeler, in 1884; fifth, by H. I. Willey, in 1889. All these surveys have been set aside by the interior department, and a sixth survey ordered, which had not been executed at the time of the trial of this case. The plaintiff claims that the survey by Wheeler is correct, but would be satisfied with that by Willey. By these two surveys the western and southern boundaries are identical, and include the land claimed by each defendant.

In the following diagram the quadrangle A, B, C, D, represents the Wheeler survey; that of A, B, C, E, the Willey

survey; and that of F, G, H, I, drawn by me, is intended to represent, proximately, the boundaries of the grant according to courses and distances as stated in the order of confirmation

by the United States land commission, and also in the judgment of the United States district court, without regard to landmarks, except that of the northwest corner of Felipe's garden as the point of commencement, it being agreed by counsel that the garden is correctly located. The quadrangle

F, J, K, I, represents a private survey made for defendants, which they claim to be a correct survey of the land granted.

No scale of distances upon which the map was drawn appears in the transcript except by inference. Mr. Chalmers Scott, the husband of the plaintiff, testified that he was a civil engineer and an attorney at law, and in explaining the map, among other things, said: "Plaintiff claims point A as the northwest corner of the ranch, point B as the southwest corner, point C as the southeast corner, and point E as the northeast corner, although point E is not so far east as we would be entitled to go, in my opinion. This would make the north line of the ranch (reduced to Mexican or Spanish varas) 5,028.92 varas, the east line 5,132.63 varas, the south line 4,784.47 varas, and the west line 4,246.9 varas in length. This is according to the Willey survey. By the Wheeler survey the north line is 5,541.54 varas, and the east line 5,126.22 varas, in length; the south and west lines being identical with the Willey survey." This, however, does not quite agree with the lengths of the lines as expressed in chains on the map, assuming that a Mexican vara is equal to 33 inches English measure, as it is understood to be in this state; and, further assuming that all the lines of the map were drawn upon the same scale, the length of the north line (A, E) of the Willey survey, as expressed in chains on the map, must be a gross error, for though it is nearly one-eighth of an inch longer than the south line of the same survey, it purports to be 68 chains shorter than the south line. Mr. Chalmers also testified that the broken lines on the map show the location of the section and quarter section lines projected from adjoining government surveys. If this is true, the map must be on a scale of two inches for a mile; and this agrees very nearly with the measurements by chain as written on the map, except in case of the north line (A, E) of the Willey survey, which should be about 230 chains instead of 133.58.

The burden of proving that defendants had ousted the plaintiff from, or withheld from her, the possession of some part of the grant, as properly located, was on the plaintiff; but I think she failed to sustain it. The grant in this case is not of a specific quantity within exterior boundaries inclosing more than the specific quantity granted. In her complaint the plaintiff has described the demanded premises only by a name;

but in proving her title she proved a judicial determination and definition of what land was meant by that name, by which determination and definition she is conclusively bound. In the judicial proceedings before the United States land commission and in the United States district court, to which her predecessor in interest was a party, the Mexican grant under which she claims was construed to be a grant of a specific tract of land described by courses, distances, monuments and quantity; and there is no dispute as to the location of the monument named as the point of commencement of the judicial description, to wit, "the northeast corner of Felipe's garden." Thence running east 2,500 varas to the boundary of the land of Lorenzo Soto, which boundary is described by the witnesses as a ridge, and not otherwise; and its location by witnesses for plaintiff is consistent with the call for distance on the west course. "Thence running south 2,500 varas to a small peak, where stand two rocks, joined together." The witnesses for defendants testified that they found the small peak and the two rocks called for at the corner marked K on the diagram, whereas plaintiff's witnesses testified that the peak and rocks called for are about a mile farther south, at the corner C on the diagram, and that the rocks and peak at K do not answer the call. On this point the evidence was conflicting; but, since point K answers the call for distance and quantity, and approximates that for course, I think the preponderance of evidence on this question is in favor of the defendants. Thence west 2,500 varas "to a small red hill." Defendants' witnesses professed to have found the "small red hill" at point J on the diagram, while plaintiff's witnesses located it two miles farther west as point B. It was not denied that there was a small hill of a reddish color at point J, but plaintiff's witnesses claimed that it was not so red as that at point B; and, on the other hand, witnesses for defendants claimed that the hill at B was not a small hill, but was a large hill. Considering the great excess over the calls for distance and quantity in extending the south line west to B, I think the evidence fully justified its termination at point J. Thence runs the fourth and last course north 2,500 varas "to the place of beginning on a hill where there is a rock—containing in all one-half of a square league." Plaintiff's witnesses locate this closing point at A, nearly a mile and a half

from the northwest corner of Felipe's garden, which must be accepted as the place of beginning, though it is not on a hill, and no rock answering the call was found within a thousand feet of it, and though the hill on which point A is located has upon it a vast number of rocks scattered over a large area of ground, as testified by the witnesses; since to dispute that one of the boundaries of that garden is the place of beginning from which the first course ran east is to dispute the record of the grant, and to dispute that the northwest corner of the garden is the place of beginning is to dispute the record of the judgment of the United States land commission, and of the United States district court, confirming the grant, by which judgments, as before remarked, the plaintiff is conclusively bound.

Other objections to the location and extent of the west line by the Willey survey are: (1) That it does not close the survey by nearly a mile and a half; (2) to close the survey by running from point A to the garden would make the grant quintangular, instead of a quadrangle, as called for; (3) it incloses more than three times as much land as called for; and (4) the west line is nearly a mile longer than called for. I think it clear that the evidence justified a finding by the lower court that the west boundary line of the grant is not farther west than a north and south line intersecting the northwest corner of Felipe's garden; and, as there is no evidence tending to prove that any one of the defendants ever entered upon or ejected the plaintiff from any land east of said north and south line, the court was also justified in finding, as it did, that none of the defendants ever entered upon or ousted the plaintiff from the premises described in the complaint, or withheld the possession of any part thereof from the plaintiff.

The plaintiff contends, however, that she was in actual possession of land west of the said north and south line, from which the defendants ejected her, and which she is entitled to recover in this action, even though it is not within the boundaries of the Rancho Buena Vista as properly located. For two sufficient reasons this point cannot be sustained: (1) She sued for and described in her complaint only the Rancho Buena Vista; she tendered no issue as to any other land; there was no issue as to any other land tried; and therefore she cannot recover any other land in this action. (2) The evidence does not tend to prove that any one of the defend-

ants entered upon any land while she was in the actual possession thereof, or upon any land within any inclosure. I think the order and judgment appealed from should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order and judgment appealed from are affirmed.